IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PAINSOLVERS, INC., | ) Civ. No. 09-00429 ACK-KSC |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| STATE FARM MUTUAL AUTOMOBILE | ) |
| INSURANCE COMPANY, AN ENTITY, | ) |
| FORM UNKNOWN; DOES 1-30, | ) |
| | ) |
| Defendant. | ) |

_____

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DETERMINING FACTS NOT AT ISSUE PURSUANT TO RULE 56(d), (3) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL DECLARATION, AND (4) GRANTING DEFENDANT'S COUNTER MOTION FOR SUMMARY JUDGMENT**

PROCEDURAL BACKGROUND

On May 20, 2009, Plaintiff Painsolvers, Inc. ("Plaintiff" or "Painsolvers"), a professional corporation authorized to provide personal injury protection ("PIP") benefits to claimants in the state of Hawai'i, filed a complaint against Defendant, State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant") in the Circuit Court of the First Circuit in Hawai'i alleging that State Farm had failed to pay two claims for PIP benefits.  On July 14, 2009, State Farm filed a motion to dismiss Painsolvers' Complaint in state court.  On September 4, 2009, Plaintiff filed a First Amended Complaint alleging that

1

State Farm had refused to pay twelve (12) PIP benefit claims and added claims for trade libel or disparagement and slander, as well as an additional prayer for general, special, and punitive damages.[1]  First Am. Compl. ¶¶ 7-8, 40-47, fifth prayer for relief (hereinafter "Compl." or "Complaint").

On September 11, 2009, Defendant State Farm removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.  The Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332 (diversity of citizenship).  On September 18, 2009, Defendant moved to dismiss Counts One through Six and Count Nine of Plaintiff's First Amended Complaint for failure to state a claim.  On November 30, 2009, Plaintiff opposed Defendant's Motion to Dismiss and filed a Counter Motion for Summary Judgment and Adjudication or Preliminary Injunction.  On January 22, 2010, this Court Granted in Part and Denied in Part Defendant's Motion to Dismiss Counts One through Six and Count Nine of the First Amended Complaint and denied Plaintiff's Counter Motion for Summary Judgment and Adjudication or Preliminary Injunction ("1/22/10 Order").  Doc. No. 28.

---

[1] The hearing on Defendant's Motion to Dismiss in state court was scheduled for September 15, 2009.  In its memorandum in opposition to Defendant's motion in state court, Plaintiff argued "Plaintiff has filed a first amended complaint, as of course. HRCP 15(a). Defendant's motion is not a responsive pleading which precludes the amendment under HRCP 15(a). Ellis v. Crocket, 51 Haw [sic] 45, 60, 451 P.2d 814 (1969).  Defendants must respond or file a new motion."  See Removal Motion Ex. F.

On April 28, 2010, Plaintiff filed a Motion for Summary Judgment and FRCP 56(d) Determination ("Plaintiff's MSJ" or "Plaintiff's Motion").  Doc. No. 38.  Plaintiff also filed a concise statement of facts in support of its motion ("Plaintiff's CSF").  Doc. No. 39.  On July 12, 2010, Defendant filed a Counter Motion For Partial Summary Judgment as to Plaintiff's Second and Third Claims for Trade Libel and Slander ("Defendant's MSJ").  Doc. No. 44.  In support of its counter motion for summary judgment and in opposition to Plaintiff's MSJ, Defendant submitted a combined memorandum of law ("Defendant's Combined Mem.").  Doc. No. 42.  Defendant also submitted a concise statement of facts in opposition to Plaintiff's CSF ("Defendant's Opposition CSF") and a concise statement of facts in support of its counter motion ("Defendant's Counter Motion CSF").  Doc. Nos. 43 & 45.

Although Plaintiff's reply in support of its motion for summary judgment and its opposition to the counter motion was due on July 19, 2010, on July 22, 2010, the Court approved a Stipulation Enlarging the Time for Plaintiff to File its Reply to July 22, 2010 (and for Defendant to file its reply in support of its counter motion to July 29, 2010).  Doc. No. 49.  Accordingly, on July 22, 2010, Plaintiff filed its combined reply in support of its motion for summary judgment and opposition to Defendant's counter motion for summary judgment ("Plaintiff's Reply").  Doc.

3

No. 50.  Plaintiff also filed a Separate Concise Statement in Reply to State Farm Mutual Automobile Insurance Company's Separate Concise Statement in Opposition to Plaintiff's Motion for Summary Judgment and FRCP 56(d) Determination ("Plaintiff's Reply CSF").  Doc. No. 52.  In addition, Plaintiff filed a Separate Concise Statement in Opposition to State Farm Mutual Automobile Insurance Company's Counter Motion for Partial Summary Judgment as to Plaintiff's Second and Third Claims, for Trade Libel and Slander ("Plaintiff's Counter Motion Opposition CSF"). On July 29, 2010, Defendant filed a reply in support of its counter motion for summary judgment.  Doc. No. 53.

A hearing on these motions was held on August 2, 2010. Subsequent to the hearing on these motions, with both parties' consent, Plaintiff submitted a supplemental production of documents that Defendant had made to Plaintiff after the close of business on July 30, 2010, for the Court's review in deciding these motions.

On August 5, 2010, Plaintiff filed a Motion for Leave to File Supplemental Declaration of Counsel [LR 56.1] In Opposition to Defendant's Counter Motion for Partial Summary Judgment ("Motion for Leave").  Doc. No. 55.  In support of that motion, Plaintiff's Counsel filed a declaration as well as Exhibit F, the proposed Supplemental Declaration.  Also on August 5, 2010, Defendant filed a memorandum in opposition to

Plaintiff's Motion for Leave ("Defendant's Opposition to the
Motion for Leave").  Doc. No. 56.  On August 6, 2010, Plaintiff
filed a Reply to Defendant's Opposition to the Motion for Leave.
Doc. No. 57.

## **FACTUAL BACKGROUND**[2]

At relevant times, Plaintiff was a professional
corporation authorized to provide personal injury protection
("PIP") benefits to claimants covered by motor vehicle insurance
policies in the State of Hawai'i.  Compl. ¶ 1.  Defendant, State
Farm Mutual Automobile Insurance Company, is an insurance company
organized under the laws of the State of Illinois, with its
principal place of business in Bloomington, Illinois, and is
authorized to transact business in Hawai'i.  Compl. ¶ 2; Notice
of Removal at ¶ 1.

Although Plaintiff's complaint alleges it submitted
over twelve (12) PIP claims on forms approved by an agency of the
United States government (CMS-1500, Health Insurance Claim Form)[3]
to Defendant State Farm, Plaintiff's CSF in support of its motion

---

[2] Except for those facts conclusively determined under Fed.
R. of Civ. P. 56(d) in Section II of the discussion section of
this order, the facts as recited in this Order are for the
purpose of disposing of these motions and are not to be construed
as findings of fact that the parties may rely on in future
proceedings in this case.

[3] The CMS-1500 is a Health Insurance Claim Form approved by
the National Uniform Claim Committee and the Office of Management
and Budget.  See, e.g., Plaintiff's CSF Ex. A.1a.

for summary judgment appears to include many more than 12

claims.[4]  Compl. ¶¶ 7-8.  Similarly, although Plaintiff's

Complaint alleges that State Farm has not paid these claims and

continues to refuse payment on these claims, Plaintiff's Motion

indicates that State Farm has made partial payment on at least

some of these claims.  See id.; see also, e.g., Plaintiff's CSF,

Shandu Decl. ¶¶ 9, 9.5, 16; Plaintiff's CSF Ex. A.25zf (a copy of

a check written by State Farm to Painsolvers for $659.35); see

also Defendant's Opposition CSF ¶ 8, McClellan Decl. ¶ 18

(listing claims for which Defendant asserts it made partial

payments).

        Plaintiff alleges that the claims, interest, costs, and

attorney's fees exceed $10,000.00.  Compl. ¶ 8.  State Farm

alleges that it properly requested additional information from

Painsolvers in order to process the claims and that Painsolvers

has not provided the requested information, thus State Farm

denied the claim.  Defendant's Combined Mem. at 2 ("Plaintiff

submitted claims, State Farm requested additional information,

Plaintiff effectively ignored the requests and State Farm then

denied the claims, as provided for in the statute.").  Plaintiff,

in contrast, alleges that "Defendants are ignoring information on

the claim forms and attachments which is sufficient to pay the

---

[4] Indeed, as discussed infra, the Court counts at least 49
CMS-1500 forms which request, at least in part, payment for
prescription drugs.

claims." Compl. ¶ 12.

Plaintiff's First Amended Complaint is divided into three "Claims:" (1) "First Claim - For Payment of Claims, Interest, Costs and Attorney's Fees" (Compl. at 3); (2) "Second Claim - Trade Libel or Disparagement" (Compl. at 7) and; (3) "Third Claim - Slander" (Compl. at 8.) Within the "First Claim," Plaintiff lists nine "counts." Plaintiff now moves for summary judgment on counts one through five, seven, and eight. Plaintiff's MSJ at 10.

## STANDARD

### I.   Motion for Summary Judgment

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is therefore appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson

7

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (citation omitted).[5]  Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

 The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Miller v. Glenn Miller Prod., Inc., 454 F.3d 975, 987 (9th Cir. 2006)  The moving party may do so with affirmative evidence or by "'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.[6]  Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  See id. at 323; Matsushita Elec., 475 U.S. at 586; Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,

---

 [5] Disputes as to immaterial issues of fact do "not preclude summary judgment." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

 [6] When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. Miller, 454 F.3d at 987.  When the nonmoving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party. Id.

818 F.2d 1466, 1468 (9th Cir. 1987).[7]  The nonmoving party must instead set forth "significant probative evidence" in support of its position.  T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  See T.W. Elec. Serv., 809 F.2d at 630-31.[8]  Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.  Anderson, 477 U.S. at 250-51.

## DISCUSSION

I.   **Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment on Counts One through Five, Seven, and Eight of the First Claim of the First

---

[7] Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

[8] At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence.  Anderson, 477 U.S. at 249; Bator v. Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994).

Amended Complaint.   Plaintiff's MSJ at 10.

Preliminarily, as the Defendant notes, the Court has previously dismissed Count Five of the First Amended Complaint. See 1/22/10 Order at 34; Defendant's Combined Mem. at 18. Additionally, as explained in the Court's 1/22/10 Order, "considered together, Counts One through Four of Plaintiff's 'First Claim' state a claim for relief that is authorized under Hawai'i Revised Statutes § 431:10C-304." 1/22/10 Order at 11. Thus, the Court will now examine whether Plaintiff is entitled to summary judgment on these counts.   The Court finds that Plaintiff is not entitled to summary judgment because there are genuine issues of material fact regarding precisely what claims are at issue here, whether partial payment on those claims has been made, whether information requests were made within 30 days of receipt of the claims, and whether those information requests are reasonable.

    A.   <u>Legal Framework</u>

Hawai'i Revised Statutes § 431:10C-304 obligates insurers to pay personal injury protection benefits and the legislative history of H.R.S. § 431:10C-304, "evinces a clear legislative intent that insurers investigate and act on claims promptly." <u>TIG Ins. Co. v. Kauhane</u>, 101 Hawai'i 311, 325, 67 P.3d 810, 824 (App. 2003).   The title of Section 431:10C-304 is "Obligation to pay personal injury protection benefits."   H.R.S.

§ 431:10C-304.  Subsection one provides that "in the case of injury arising out of a motor vehicle accident, the insurer shall pay, without regard to fault, to the provider of services on behalf of the following persons who sustain accidental harm . . . an amount equal to the personal injury protection benefits as defined in section 431:10C-103.5(a). . . ."  H.R.S. § 431:10C-304(1).  Subsection three further establishes the mandatory requirement that "payment of personal injury protection benefits shall be made within thirty days after the insurer has received reasonable proof of the fact and amount of benefits accrued."  H.R.S. § 431:10C-304(3)(A)(emphasis added).

"Reasonable proof" is not defined in Hawai'i Revised Statutes.  As the Hawai'i Intermediate Court of Appeals ("ICA") explained:

> Applying the foregoing principles of statutory construction to HRS § 431:10C-304(3), it is initially obvious, as the differing interpretations of the statute by TIG and the Insurance Commissioner confirm, that the language of the statute is not plain and unambiguous.  Specifically, it is unclear from the face of the statute: (1) what constitutes "reasonable proof of the fact and amount of [no-fault] benefits accrued" for purposes of triggering the insurer's obligation under HRS § 431:10C-304(3)(A) to pay no-fault benefits within thirty days after receiving such proof; and (2) what "additional information or loss documentation" an insurer can require a claimant to submit under HRS § 431:10C-304(3)(C).

TIG Ins. Co. v. Kauhane, 101 Hawai'i 311, 325, 67 P.3d 810, 824 (App. 2003).  The ICA further noted, during its examination of the legislative history of this statute:

11

It appears from the record on appeal that the Insurance
Commissioner has been determining what constitutes
"reasonable proof of the fact and amount of [no-fault]
benefits accrued" on a case-by-case basis pursuant to
the adjudicatory process set forth in the Hawaii
Administrative Procedures Act, HRS chapter 91.
Furthermore, different Insurance Commissioners have not
interpreted the requirements of HRS § 431:10C-304(3)(C)
in the same way, thus leading to confusion among
insurance companies as to what their obligations are
under the statute.  We strongly urge the Insurance
Commissioner to adopt rules to flesh out the fuzzy
contours of the Insurance Code, HRS chapter 431, so
that confusion does not reign as to what the
requirements of the law are.

TIG Ins., 101 Hawai'i at 325 n.16, 67 P.3d at 824 n. 16.

        Although the Insurance Commissioner still has not

adopted any rules effectuating H.R.S. § 431:10C-304 or defining

reasonable proof, recent decisions of the Hawai'i Supreme Court

and the Hawai'i Intermediate Court of Appeals, establish the

standard for reasonable proof and the framework for analyzing an

insurer's additional information requests.  In Jou v. Schmidt the

ICA rejected the insurer's argument that "because it never

received 'reasonable proof from [provider], the thirty-day

deadline for payment or denial never began running and interest

never began accruing."  117 Hawai'i 477, 488, 184 P.3d 792, 803

(App. 2008) (hereinafter "Jou").  The ICA held:

        The Hawai'i Supreme Court articulated the "reasonable
        proof" required under HRS § 431:10C-304 to trigger
        either payment or denial of a claim as follows:
                In other words, an insurer shall pay no-fault
                benefits within thirty days of receipt of a
                provider's billing statement showing "the
                fact," i.e., the treatment services, and "the
                amount of benefits," i.e., the charges or

costs of treatment services.

Id. 117 Hawai'i at 489, 184 P.3d at 804 (citing Orthopedic Assoc. of Hawaii v. Hawaiian Ins. & Guar. Co., Ltd., 109 Hawai'i 185, 195, 124 P.3d 930, 940 (2005)).  Thus, the ICA in Jou held that "in the first instance, [the provider] was required to submit nothing more than his billing statement showing the treatment services he performed, and the charges or costs of those services. [The provider] did so." Id.  The ICA also specifically noted that "[a]lthough [the provider's] original invoices were not in the record before the agency, [the insurer did] not deny receiving the invoices, which it ultimately paid in full, or allege that [the provider] failed to submit bills showing the treatment and charges." Jou v. Schmidt, 117 Hawai'i at 489 n. 13, 184 P.3d at 804 n.13.

   B.   Analysis

      Plaintiff asserts that based on admissions by State Farm, the exhibits attached to its concise statement and other materials, that it has satisfied "much more than its initial burden to show treatment services and the amount of the charges." See Plaintiff's MSJ at 12.  Accordingly, Plaintiff argues that it is entitled to summary judgment because all it is required to show is that it provided "reasonable proof" to State Farm, which triggers State Farm's obligation to pay or deny benefits within 30 days.  Thus, Plaintiff argues because State Farm did not pay

or deny benefits within 30 days as required, it is entitled to summary judgment.  Defendant asserts that Plaintiff's reading of the case law is incorrect and that there are material issues of fact regarding the reasonableness of State Farm's information requests.  The Court agrees.

In asserting that all it must show is that State Farm received its bills showing the fact of treatment and the costs, Plaintiff places too much reliance on this Court's 1/22/10 Order, without considering the procedural posture of the case and the evidence that Plaintiff had submitted in support of its counter motion for summary judgment at that point.  In the 1/22/10 Order, which granted in part and denied in part Defendant's motion to dismiss and denied Plaintiff's counter motion for summary judgment, this Court explained:

> Although Defendant argues that it requested additional information that Plaintiff did not provide, under the standard set forth in <u>Jou</u>, taking all allegations of material fact as true and construing them in the light most favorable to the [non]moving party, Plaintiff states a plausible claim that it has submitted reasonable proof to Defendant State Farm (in the form of the CMS-1500 forms) and that Defendant has not either paid or denied Plaintiff's claim for PIP benefits within thirty days as required by H.R.S. § 431:10C-304(3)(A).

1/22/10 Order at 20-21.  It is important to recall the differing burdens on a motion to dismiss and a motion for summary judgment.

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light

14

most favorable to the nonmoving party.  <u>Fed'n of African Am.</u>
<u>Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir.
1996).  At that point, "[t]he issue is not whether a plaintiff's
success on the merits is likely but rather whether the claimant
is entitled to proceed beyond the threshold in attempting to
establish his claims."  <u>De La Cruz v. Tormey</u>, 582 F.2d 45, 48
(9th Cir.), <u>cert.</u> <u>denied</u>, 441 U.S. 965 (1979).  Thus, in light of
the standard at a motion to dismiss stage and Plaintiff's
pleadings, the Court found that Plaintiff had stated a claim.

     In contrast, this case is now at the summary judgment
stage.  On a motion for summary judgment, the moving party has
the burden of persuading the court as to the absence of a genuine
issue of material fact.  <u>Celotex</u>, 477 U.S. at 323; <u>Miller v.</u>
<u>Glenn Miller Prod., Inc.</u>, 454 F.3d 975, 987 (9th Cir. 2006).
When evaluating a motion for summary judgment, the court must
construe all evidence and reasonable inferences drawn therefrom
in the light most favorable to the nonmoving party.  <u>See</u> <u>T.W.</u>
<u>Elec. Serv.</u>, 809 F.2d at 630–31.[9]  Accordingly, if "reasonable
minds could differ as to the import of the evidence," summary
judgment will be denied.  <u>Anderson</u>, 477 U.S. at 250–51.  Because
Plaintiff is the party that has moved for summary judgment as to

---

[9] At the summary judgment stage, the court may not make
credibility assessments or weigh conflicting evidence.  <u>Anderson</u>,
477 U.S. at 249; <u>Bator v. Hawaii</u>, 39 F.3d 1021, 1026 (9th Cir.
1994).

the first claim (for payment of claims, interest, and attorney's fees under H.R.S. 431:10C-304), Plaintiff bears the burden of persuading the Court that there are no genuine issues of material fact.  Plaintiff has failed to do so.

Plaintiff overly emphasizes the Court's statement that "[w]ithout copies of the bills, the Court cannot rule that Plaintiff has met its initial burden to show the treatment services and the amount of the charges."  1/22/10 Order at 29 (citing Jou v. Schmidt, 117 Hawai'i 477, 489, 184 P.3d 792, 804 (App. 2008)).  The Court, however, was not ruling that copies of the bills were all that was needed for the Court to grant summary judgment to the Plaintiff, but merely pointing out that, at that time, Plaintiff had not even presented a bare minimum of evidence that could possibly entitle it to summary judgment.  Plaintiff, though, appears to have interpreted this language to mean that, to succeed on summary judgment, all it must show is that it submitted bills to State Farm and that State Farm did not pay or deny benefits within thirty days.

Plaintiff repeatedly cites to State Farm's admissions that it received billing statements to assert that State Farm received reasonable proof and thus was not allowed to request any additional information.  See, e.g., Plaintiff's Reply at 8 (arguing that "[h]ere, State Farm admits both receiving reasonable proof and still needing additional information. The

16

two are mutually exclusive") (emphasis in original, citation

omitted).[10]  Such an interpretation does not comport with the

statute or the case law.

As Defendant aptly argues:

> Plaintiff's reliance on Jou v. Schmidt, 117 Haw. 477,
> 184 P.3d 792 (Haw. App. 2008), is misplaced.  In that
> case, the Intermediate Court of Appeals (the "ICA")
> held only that a physician's submission of a billing
> statement constitutes "reasonable proof" for purposes
> of triggering the notice and interest provisions of
> Haw. Rev. Stat. § 431:10C-304(4).  It did not hold that
> the mere submission of a billing statement requires an
> insurer to pay the claim, particularly where the
> insurer requests additional information to determine
> whether amounts billed were reasonably and necessarily
> incurred.  To read Jou as Plaintiff suggests would
> require striking Haw. Rev. Stat. § 431:10C-304(c),
> permitting an insurer to request additional information
> from a claimant or provider, altogether.  There is
> nothing in Jou embracing such an expansive view.

Defendant's Combined Mem. at 11.  The Court agrees.  Plaintiff's

interpretation would render § 431:10C-304(3)(C) superfluous.  "It

is a cardinal rule of statutory construction that courts are

bound, if rational and practicable, to give effect to all parts

of a statute, and that no clause, sentence, or word shall be

construed as superfluous, void, or insignificant if a

construction can be legitimately found which will give force to

and preserve all the words of the statute."  Camara v. Agsalud,

67 Haw. 212, 215-16, 685 P.2d 794, 797 (1984) (internal citation

---

[10] The Court observes that, as discussed infra, Defendant
does not in fact, admit to receiving "reasonable proof."  See
Plaintiff's CSF, Ex. B. RFA No. 5.

omitted).

Plaintiff focuses on H.R.S. § 431:10C-304(3)(A) which provides, in part, "[p]ayment of personal injury protection benefits shall be made within thirty days after the insurer has received reasonable proof of the fact and amount of benefits accrued, and demand for payment thereof."  Defendant, in contrast, focuses on H.R.S. § 431:10C-304(3)(C), which provides:

> If the insurer cannot pay or deny the claim for benefits because additional information or loss documentation is needed, the insurer shall, within thirty days, forward to the claimant an itemized list of all the required documents.  In the case of benefits for services specified in section 431:10C-103.5(a) the insurer shall also forward the list to the service provider.

H.R.S. § 431:10C-304(3)(C).

Plaintiff emphasizes the following language from <u>Jou</u>:

> In <u>TIG Ins.</u>, we rejected the insurer's argument that its requests for additional information from providers tolled the thirty-day deadline in which it had to make payments or issue a denial.  Instead, we held 'Nowhere in HRS § 431:10C-304(3) is there any language authorizing an insurer to continue to request additional information or loss documentation from a claimant or claimant's medical providers more than thirty days after the insurer has received a claim for no-fault benefits and a demand for payment.

<u>Jou</u>, 117 Hawai'i at 489, 184 P.3d at 804.  The <u>Jou</u> court also expressed skepticism regarding whether the insurer's request for "all applicable office notes and or documentation regarding the services rendered on the attached billing" and its request for the specific identity of the person who performed services and

18

speciality of the provider count as "itemized lists" but did not rule on that issue.  Id.

However, the decisions in both Jou and TIG Ins. were made under very different factual circumstances than those with which this Court is presented.  In TIG Ins., the insurance company made more than one request for additional information, continued to request additional information even after receiving copies of medical records, requested information that was not in existence (i.e. TIG Insurance sent letters to doctors with questions that it wanted answered, it did not simply seek documentation), and required the claimant to submit to an independent medical examination.  See TIG Ins., 101 Hawai'i at 314-318, 67 P.3d at 813-318 (describing the lengthy claims process in that case and the extensive correspondence between providers and the insurance company, in which almost a year elapsed between the submission of the claim for personal injury protection benefits and the insurer's first denial of such benefits).

Furthermore, the holding in TIG Insurance was limited to determining that "the Insurance Commissioner was authorized to order TIG to pay interest on an untimely paid claim or to assess civil penalties against TIG."  Id. at 328, 67 P. 3d 827.  The Intermediate Court of Appeals specifically held that the Insurance Commissioner could not "default" insurers for failure

19

to timely determine or pay a claim.[11]  <u>Id.</u>  Accordingly, the

Intermediate Court of Appeals remanded the case to the Insurance

Commissioner for further proceedings on the substantive merits of

the claim.  <u>Id.</u>  In light of the Court of Appeals decision

remanding the case for a determination on the merits of the

claim, the Court is not persuaded by Plaintiff's argument that

"time-barred information requests and explanations for partial

payment are void and should be stricken."[12]  Plaintiff's MSJ at

---

[11] Plaintiff asserts that while the Insurance Commissioner
cannot default an insurer; the Court can default an insurer
because of its inherent power. Rough Transcript of Hearing
("Tr.") at 17: 3-20.  Given the broad enforcement powers the
Insurance Commissioner is given, the Court is not persuaded that
it should default an insurer, where the Commissioner cannot.
Rather, the <u>Jou</u> decision appears to stand for the proposition
that claims should be paid based upon their merits, even if they
are not timely paid, but that interest at the rate of 1.5% per
month would accrue.

[12] The Court also rejects Plaintiff's somewhat confusing
waiver argument.  Plaintiff's MSJ at 24-28.  This argument does
not appear to be well grounded in either law or fact and appears
instead to be another reiteration of Plaintiff's objections to
the reasonableness of State Farm's information requests.  In
addition, the Court agrees with Defendant that the Insurance
Commissioner's Order Plaintiff attaches as Exhibit C to
Plaintiff's CSF is not as relevant as Plaintiff appears to
believe.
    Plaintiff requests that the Court take judicial notice
of the Insurance Commissioner's Order.  <u>See</u> Plaintiff's CSF,
Declaration of Counsel and Request For Judicial Notice (located
in between Exhibits A and B).  Pursuant to Fed. R. Evid. 201, a
court may take notice of facts that are capable of accurate and
ready determination by resort to sources whose accuracy cannot
reasonably be questioned.  Fed. R. Evid. 201(b).
    Judicial notice is properly taken of transcripts,
    orders and decisions made by other courts or
    administrative agencies. <u>See</u> <u>Engine Mfrs. Ass'n v.</u>
                                        (continued...)

22.

In Jou, although the insurance company had challenged a

number of bills, it eventually (and prior to any decision by a

court) paid Jou's bills in full.  See Jou, 117 Hawai'i at 480,

184 P.3d at 796.  Accordingly, the narrow issue before the

Intermediate Court of Appeals in Jou was whether Jou was entitled

to interest on the bills that were eventually paid, but which had

not been paid within 30 days.  Id. 117 Hawai'i at 481, 184 P.3d

at 797.  In Jou the insurer "withheld payment on the bills at

issue for somewhere between one and three years before paying

them in full." Id. 117 Hawai'i at 489, 67 P.3d at 804.

Furthermore, the Intermediate Court of Appeals noted that the

---

(...continued)
        South Coast Air Quality Management Dist., 498 F.3d
        1031, 1039 n. 2 (9th Cir. 2007) (taking judicial notice
        of oral argument transcript); Holder v. Holder, 305
        F.3d 854, 866 (9th Cir.2002) (taking judicial notice of
        a state court decision and the briefs filed in that
        court to determine if an issue was raised and decided
        by the state court for res judicata purposes) . . . .
Hardy v. County of El Dorado, No. S-07-0799 RRB EFB, 2008 WL
268966, at *5 n. 17 (E.D. Cal. Jan 29, 2008) (some citations
omitted); see also Robinson Rancheria Citizens Council v. Borneo,
Inc., 971 F. 2d 244, 248 (9th Cir. 1992) (holding that a court
"may take notice of proceedings in other courts, both within and
without the federal judicial system, if those proceedings have a
direct relation to matters at issue."). Thus, as Defendant has
not objected, and it is an order from an administrative agency,
the Court can take judicial notice of the Insurance
Commissioner's Order.  However, that case involves entirely
different claims and parties and the Commissioner did not make a
ruling on the merits of the disputed claims in that case.
Therefore, it does not aid Plaintiff here.  See Defendant's
Combined Mem. at 14.

insurer had responded to only two out of six initially disputed billing statements with requests for additional information.  <u>Id.</u> 117 Hawai'i at 489 n.14, 67 P.3d at 804 n.14.

Accordingly, in light of the foregoing, the Court finds that there are genuine issues of material fact here.  State Farm admits that it received "billing statements from Plaintiff" and that as to all of those claims "there was information showing the fact, i.e., the treatment services and the amount of benefits, i.e., the charges or costs of treatment services."  <u>See</u> Plaintiff's MSJ at 11.  State Farm also admits that the claims all showed "treatment and charges."  <u>Id.</u>  State Farm, however, denies that it received "reasonable proof."  <u>See</u> Plaintiff's CSF Ex. B. RFA No. 5 (denying that "as to all claims you received from Plaintiff for personal injury protection benefits, you have been provided 'reasonable proof' as determined in <u>Orthopedic Assoc. Etc v. HIG etc</u>, <u>supra</u>, 109 Haw. at 195").

State Farm has persuasively argued that it is entitled under H.R.S. § 431:10C-304(3)(C) to request additional information or loss documentation, and Plaintiff's CSF establishes that State Farm did request additional information. <u>See, e.g.</u>, Plaintiff's CSF Exhibit A.1, A.2, Shandu Decl. ¶¶ 10.1, 10.2.  Plaintiff disputes whether the information State Farm requested was necessary and reasonable, but, as discussed <u>infra</u>, this is a vigorously disputed issue of material fact that

cannot be decided at this point.  As State Farm aptly argues, under Hawai'i law, there is no statutory presumption that medical treatments following a motor vehicle accident are the appropriate, reasonable, and necessary result of the accident as long as the treated injuries are the kind produced by motor vehicle accidents.  See Defendant's Combined Mem. at 9; Hoffacker v. State Farm Mut. Auto. Ins. Co., 101 Hawai'i 21, 24, 61 P.3d 532, 535 (App. 2002).  Furthermore, a party contesting the denial of benefits bears the burden of showing the denial of benefits was improper.  Hoffacker, 101 Hawai'i at 24, 61 P.3d at 535.

Plaintiff asserts that the information requested was unnecessary and that such requests were made in bad faith and were "vague excuses for payment withholding as a pretext to increase earnings at Plaintiff's expense."[13]  Plaintiff's MSJ at 21.  The Court, however, is not persuaded that, at this point, Plaintiff has carried its burden to show that the treatment was appropriate, reasonable, and necessary, nor can it determine at this point that State Farm's information requests were unnecessary or unreasonable.  At the summary judgment stage, the

---

[13] Under the heading "Defendant Made Requests for Unnecessary Information and Vague Excuses For Payment Withholding As A Pretext to Increase Earnings At Plaintiff's Expense," Plaintiff includes thirteen subheadings.  See Plaintiff's MSJ Table of Contents at i-ii.  Some of these categories are directly addressed elsewhere in this order, however for the sake of clarity, the Court finds that none of them establish there are no material issues of fact about the reasonableness or unreasonableness of State Farm's information requests.

court may not make credibility assessments or weigh conflicting

evidence.  <u>Anderson</u>, 477 U.S. at 249; <u>Bator v. Hawaii</u>, 39 F.3d

1021, 1026 (9th Cir. 1994).  State Farm provides reasonable

explanations for its requests, while Plaintiff vehemently insists

such requests were made in bad faith and were unreasonable.[14]

_____

[14] To the extent Plaintiff is arguing for an independent
claim of insurer bad faith by repeatedly citing to <u>Best Place v.
Penn. Am. Ins. Co.</u>, 82 Haw. 120, 920 P.2d 334 (Haw. 1996),
Plaintiff has not pled, and cannot recover for, such a claim.
The Hawaii Supreme Court has held that a provider, as opposed to
an insured, cannot maintain a bad faith claim against an insurer.
<u>See</u> <u>Jou v. Dai-Tokyo Royal State Ins. Co.</u>, 116 Hawaii 169, 170,
172 P.3d 471, 482 (2007).
        Furthermore, at oral argument, Plaintiff's counsel
asserted that in light of <u>Jou v. Dai-Tokyo</u>, the unpublished
decision in <u>Jou v. Schmidt</u> upon which Defendant relies is no
longer good law.  <u>Jou v. Schmidt</u>, No. 27652, 2008 WL 2267179,
2008 Haw. App. LEXIS 289 (App. June 4, 2008); <u>see</u> Tr. at 37-38;
Defendant's Combined Mem. at 18-19.  In the <u>Jou v. Schmidt</u>
decision, the ICA "rejected [the provider's] argument that he was
entitled to payment from [the insurer] after the applicable
policy limits were exhausted."  2008 WL 2267179 at *1.
        At oral argument, Plaintiff's counsel argued that the
<u>Jou v. Schmidt</u> case:
     [D]ealt with the issue of contract . . . and that in
     the contractual setting that would be maybe a good
     conclusion that parties could cap their liability and
     if somebody's PIP was exhausted during a dispute, too
     bad.  Contractually speaking.  But now after the
     Supreme Court decided <u>Jou v. DTRIC</u> there is no privity
     anymore.  There's no third-party beneficiary
     relationship between physicians and insurance companies
     so the whole underpinning for that <u>Schmidt</u> case is
     gone. The only thing left is statute . . . In other
     words, I see nothing in the statute at all that limits
     the insurance companies' obligation to these doctors to
     the ten thousand dollars.
Tr. at 37-38.  Plaintiff's counsel acknowledged that, in asking
the Court to find that an insurer could be liable for PIP
benefits beyond the contractual maximum, he was asking this Court
to make new law.  Tr. at 40.  The Court declines to do so.  The
                                              (continued...)

This issue involves determinations of credibility and weighing conflicting evidence, which the Court cannot do on a motion for summary judgment.

State Farm is only obligated to pay personal injury protection benefits, which means:

> [A]ll appropriate and reasonable treatment and expenses necessarily incurred as a result of the accidental harm and which are substantially comparable to the requirements for prepaid health care plans, including medical, hospital, surgical, professional, nursing, advanced practice nursing recognized pursuant to chapter 457, dental, optometric, naturopathic medicine,

---

(...continued)
Court told Plaintiff's counsel if he wished to pursue that point he should do so before the legislature.  Tr. at 40:9-10.

First, as Jou v. Dai-Tokyo was decided prior to Jou v. Schmidt, Jou v. Dai-Tokyo could not have eliminated the "whole underpinning" of Jou v. Schmidt.  Second, the Court observes that in a later, different Jou v. Dai-Tokyo Royal Ins. Co. case the ICA again rejected the provider's "argument that he was entitled to payment from [the insurer] after the applicable policy limits were exhausted."  See Jou v. Dai-Tokyo Royal Ins. Co., No. 28106, 2008 WL 3919856 at *1 (App. Aug. 27, 2008).  Although both of these ICA decisions are unpublished and thus do not establish precedent for Hawai'i courts, the Court finds them instructive in interpreting this ambiguous statutory scheme.  Furthermore, the Court agrees that limiting the insurer's payment to its contractual obligation comports with general contract principles. See Salviejo v. State Farm Fire & Cas. Co., 87 Hawai'i 430, 434-435, 958 P.2d 552, 556-57 (App. 1998) (explaining "[o]ur jurisdiction follows the principle that liability insurers have the same rights as individuals to limit their liability") (internal quotation and citation omitted).

Additionally, the Court notes that the legislature has encouraged timely payments by including a steep interest penalty for untimely payments.  See H.R.S. 431:10C-304(4) ("amount of benefits which are unpaid thirty days after the insurer has received reasonable proof of the fact and the amount of benefits accrued, and demand for payment thereof, after the expiration of the thirty days, shall bear interest at the rate of one and one-half per cent per month.")

> chiropractic, ambulance, prosthetic services, medical
> equipment and supplies, products and accommodations
> furnished, x-ray, psychiatric, physical therapy
> pursuant to prescription by a medical doctor,
> occupational therapy, rehabilitation, and therapeutic
> massage by a licensed massage therapist when prescribed
> by a medical doctor.

H.R.S. § 431:10C-103.5(a) (emphasis added).  Accordingly, the

Court finds that State Farm is entitled to do some investigation

to determine whether claimed benefits are appropriate and

reasonable.  This is precisely what is contemplated by H.R.S. §

431:10C-304(3)(C) which allows the insurer to request "additional

information and loss documentation."  State Farm argues, _inter_

_alia_, that it sought to verify that Plaintiff was offering

patients the option to obtain their prescription elsewhere as

they are required to by law.  Defendant's Combined Mem. at 4, 16.

State Farm further argues that the prescription issue:

> [I]s an important consideration as Painsolvers often
> charged considerably more for common medications than
> would a pharmacy.  For example, in March 2008,
> Painsolvers billed State Farm $264.60 for 60 units of
> the nonprescription acid reducer Ranitidine.  State
> Farm's research indicated that a patient could purchase
> a comparable quantity of this medication from Safeway
> for $27.49 (for 65 tablets) or from Walmart for 10.
> Similarly, Painsolvers billed State Farm $346.00 for
> 120 units of Carisoprodol, a muscle relaxant.  A 30-day
> supply of the drug could be purchased from a drug store
> such as Longs Drugs for $25.30.

_Id._  State Farm also asserts that Haw. Rev. Stat. § 329-31.5

requires that controlled substances stocked at a clinic be

dispensed only by treating practitioners for emergency and urgent

care, when a written prescription would not be practical, but

26

that it appears Painsolvers regularly and routinely dispensed

controlled substances including, but not limited to, hydrocodone.

Id. at 5.

        The Court finds that there are genuine issues of

material fact regarding whether these inquiries were permissible

under H.R.S. § 431:10c-304(3)(C) to determine if treatment was

appropriate and reasonable.  While not ruling on these issues, it

appears these inquiries may be reasonable.  According to

Defendant, Plaintiff is charging a substantially higher price for

prescription drugs than local pharmacies.  See Defendant's

Combined Mem. at 3-4.  Thus, it seems reasonable for State Farm

to inquire whether Painsolvers is complying with Hawai'i law.  As

Defendant notes, if Plaintiff is charging prices that are ten-

times those of local pharmacies, a claimant's PIP benefits would

be exhausted substantially sooner by obtaining medicine from

Painsolvers as opposed to a pharmacy.  Furthermore, a very large

proportion of the claims for which Plaintiff asserts it is

entitled to payment, appear to be for prescription drugs that

were dispensed through Plaintiff's clinic.  The Court has counted

at least forty-nine (49) CMS-1500 forms in Plaintiff's CSF that

appear to include charges for prescription drugs.[15]  Thus, it

_____

        [15] The Court further observes that it appears partial
payments have been made for some of these claims, although it is
unclear to which claim precisely the partial payments apply.  See
Defendant's Opposition CSF, McClellan Decl. ¶ 18 (noting partial
                                              (continued...)

appears reasonable for State Farm to make inquiries of Plaintiff. See, e.g., Plaintiff's CSF Ex. A.1.a, A.2.a, A.3a, A.4c.

The Court further observes that State Farm's inquiries regarding Plaintiff's distribution of controlled substances outside of emergency or urgent care visits may be reasonable. Plaintiff's concise statement shows at least two (and likely more) examples of Plaintiff distributing hydrocodone in connection with a consultation visit.  Compare, e.g., Plaintiff's CSF Ex. A.1a (requesting payment for 120 units of "hydro") and Ex. A.1b (thanking Dr. Hilton for his "authorization for this consultation/evaluation" and for the opportunity to participate in the care of the patient as "secondary treating physician"). The Court is not ruling on whether this request is or is not reasonable (or whether it is or is not "urgent care") but simply remarks that a consultation visit in which a report is drafted and sent to another physician seems to be at odds with urgent care.

In addition to the aforementioned disputed material

---

(...continued)
payments that had been made, but identifying them only by the claimant's number, not in response to a particular documented claim).  Furthermore, it is unclear whether each of these claims is an independent claim because it appears certain forms may be duplicated.  For example, Plaintiff's Ex. A.4b is dated March 25, 2008 for $927.24, as is SF 00726, although there are slight differences in the forms.  Thus, it is unclear whether these represent two different claims, or a duplication of the same claim.  See Plaintiff's CSF Ex. A.4b and SF00726.

facts, the Court observes that there are many other issues of material fact.  For example, Plaintiff's declaration itself appears to create issues of material fact.  Dr. Shandu makes confusing statements in his declaration such as "there was no partial payment," which is immediately followed by the statement that "State Farm paid the claim, apparently back dating its cover sheet."  See Plaintiff's CSF Shandu Decl. ¶ 13.  Similarly, Dr. Shandu declares "Defendant State Farm failed and refused to pay this claim in full and instead requested unauthorized and irrelevant information to avoid payment" and then asserts "Payment was made at SF00244-245."  See Id. ¶ 14.

First, the Court observes that Plaintiff's First Amended Complaint did not allege any partial payments, and, in its 1/22/10 Order, the Court specifically dismissed Count Five because Plaintiff had not plead that it had received any partial payment from Defendant.  See 1/22/10 Order at 26-27. Furthermore, where there has been a partial payment, billing disputes are governed by H.R.S. § 431:10C-308.5, which requires the parties to negotiate in good faith.  Although Plaintiff's CSF asserts that "Plaintiff made and documented numerous efforts to reach a negotiated resolution of the dispute," the Court is not persuaded that, even had Plaintiff pled a claim under H.R.S. § 431:10C-308.5, that Plaintiff has shown it attempted to negotiate in good faith.  Plaintiff's CSF ¶ 11.  Plaintiff's CSF cites to

29

only one letter to State Farm in response to an information request (a letter from Plaintiff dated January 6, 2010) and one example of Plaintiff sending State Farm a letter indicating that another insurer had found its charges to be reasonable.  Second, in its concise statement, Plaintiff has not included the document bates stamped SF00244-245, which allegedly shows a payment was made.

Finally, Plaintiff's CSF Exhibit A.11o is yet another example of Plaintiff creating genuine issues of material fact all on its own.  This CMS-1500 form requests payment for 500 units of a drug for $1810.48.  See Plaintiff's CSF Ex. A.11o.  However, in his declaration Dr. Shandu states

> [t]here was a calculation mistake on this form.  The dosage should not have been at 500. I cannot determine [if] there was an overpayment.  Defendant State Farm failed and refused to pay this claim and instead requested unauthorized and irrelevant information to avoid payment. Ex. A.11L. [I] did not provide additional information since all information needed by State Farm to pay the claim had been provided.

Plaintiff's CSF Shandu Decl. ¶ 27.  Given that State Farm's information request indicated "[d]ocumentation from [the patient] in the form of a copy of a bottle does not support this quantity of medication being provided to her" (Ex. A.11L) and that Plaintiff acknowledges there was a mistake, it seems to the Court State Farm's request is most likely reasonable.  However, even for this claim, it appears Plaintiff refused to provide any additional information.

30

C.   <u>Plaintiff's Other Arguments</u>

Plaintiff also appears to argue that State Farm routinely violates H.R.S. § 431:13-103(a)(11)(N).  <u>See</u> Plaintiff's MSJ at 1-2.  H.R.S. § 431:13-103 is "Unfair methods of competition and unfair or deceptive acts or practices defined" and section (a)(11) is "unfair claims settlement practices."  To the extent Plaintiff intends this to be an independent claim, the Court rejects this argument.  Plaintiff has not plead a claim under this statute and it appears Plaintiff is not entitled to maintain a private right of action based upon this statute.  <u>See</u> <u>Young v. Car Rental Claims, Inc.</u>, 255 F.Supp.2d 1149, (D. Haw. 2003) ("plaintiff cannot bring a private cause of action under H.R.S. § 431:103 to effect private enforcement.").  Plaintiff is, of course, free to argue at trial that the standards set forth in the unfair claims settlement practices statute provide evidence of the reasonableness or unreasonableness of State Farm's information requests.

Plaintiff also asserts "targeting health providers for different benefits treatment is discriminatory."  Plaintiff's MSJ at 28.  Plaintiff asserts that H.R.S. § 431:13-103(a)(7)(C) prohibits State Farm from discriminating against Plaintiff.  H.R.S. § 431:13-103(a)(7)(C) is not applicable here (and in any event, a private right of action would also not exist under this statute, pursuant to <u>Young</u>, discussed <u>supra</u>).  That statute

31

prohibits "[m]aking or permitting any unfair discrimination between individuals or risks of the same class and of essentially the same hazards by refusing to issue, refusing to renew, canceling, or limiting the amount of insurance coverage on a property or casualty risk because of the geographic location of the risk."  This is not applicable here because there is no allegation that State Farm is refusing to renew, cancel, or limit insurance coverage based upon the geographic location of the risk and there is no private right of action under this statute.

>    D.    Summary Regarding Plaintiff's Motion for Summary Judgment

At this point there are many disputed issues of material fact and the Court cannot rule that Plaintiff is entitled to judgment on Counts One through Four, Seven, and Eight of the First Amended Complaint.  There are genuine issues of material fact regarding the number and amount of claims at issue here, whether Defendant has partially paid claims, and the reasonableness of Defendant's information requests.

## II.    Plaintiff's Motion for a Rule 56(d) Determination

Plaintiff's Motion also requests a Federal Rule of Civil Procedure 56(d) ("Rule 56(d)") Determination.  Rule 56(d)(1) provides:

> If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue.  The Court should so determine by examining the pleadings and evidence before it and by interrogating

> the attorneys.  It should then issue an order
> specifying what facts—including items of damages or
> other relief—are not genuinely at issue.  The facts so
> specified must be treated as established in the action.

Rule 56(d)(1).  As discussed above, the Court is unable to grant summary judgment because there are many disputed issues of material fact.  Also, as explained above, Plaintiff creates some of those issues by its own submissions.  Accordingly, it is practicable at this point to determine only that the following facts are not in dispute:

1.  As to all claims for personal injury protection benefits at issue in this lawsuit, State Farm received billing statements from Plaintiff.  <u>See</u> Plaintiff's CSF Ex. B RFA No. 6.

2.  As to all claims for personal injury protection benefits at issue in this lawsuit, State Farm received information showing the fact, i.e., the treatment services and the amount of benefits, i.e., the charges or costs of treatment services.  <u>See</u> Plaintiff's CSF Ex. B. RFA No. 8.

3.  With respect to each of the claims referenced in the exhibits to Plaintiff's CSF, State Farm requested additional information.  <u>See</u> Defendant's Opposition CSF ¶ 12; Plaintiff's Reply CSF ¶ 12.

4.  In at least one instance, information provided on a claim did not match the quantity of medication

dispensed.  <u>See</u> Defendant's Opposition CSF ¶ 19; Plaintiff's Reply CSF ¶ 19.

5.    The PIP coverage limits for the following claims have been exhausted:[16] 51-0617-469 (Plaintiff's Exs. A.6-A.11); 51-0623-004 (Plaintiff's Exs. A.27-28); 51-0618-911 (Plaintiff's Ex. A.29); 51-0625-400 (Plaintiff's Ex. A.31). <u>See</u> Defendant's Opposition CSF ¶ 25; Plaintiff's Reply CSF ¶ 25.

6.    State Farm has partially paid some of the claims at issue in this lawsuit.  <u>See</u> Plaintiff's CSF ¶ 8; Defendant's Opposition CSF ¶ 8; Defendant's Opposition CSF, McClellan Decl. at ¶ 18.

## III.    Defendant's Counter Motion For Summary Judgment

Defendant filed a counter motion for partial summary judgment as to Plaintiff's second claim for trade libel or disparagement and Plaintiff's third claim for slander. Defendant's Combined Mem. at 20.  Defendant argues that the factual allegations in Plaintiff's First Amended Complaint are very vague.  Thus, Defendant propounded interrogatories regarding Plaintiff's defamation claim, which Plaintiff refused to

---

[16] The Court is reiterating the language used by the parties here, but notes that, in certain instances, Plaintiff appears to have made multiple "claims" (in terms of number of billing statements submitted) for each particular patient with a given claim number.

answer.[17]

Trade libel or disparagement entails "the publication of matter disparaging the quality of another's land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary loss to the other through the conduct of a third person in respect to the other's interests in the property." Hawaiian Ins. & Guar. Co. Ltd. v Blair Ltd., 6 Haw. App. 447, 454-55, 726 P.2d 1310, 1315 (1986) (quoting Restatement (Second) of Torts § 626 (1977)).  "At a minimum, a claim for trade libel or disparagement requires '(a) a publication; (2) which induces others not to deal with the plaintiff; and (3) special damages." Id.

To prove defamation under Hawai'i law, Plaintiff must establish four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) the publisher was negligent; and (4) either actionability of the statement irrespective of special harm, or the existence of special harm caused by the publication. Wilson

---

[17] Although it is not necessary to consider for purposes of this motion, the Court questions Plaintiff's good faith in refusing to answer a single interrogatory.  The Court finds it especially troubling that Plaintiff refused to "identify each and every personal injury protection ("PIP") claim for which Painsolvers is seeking payment or disputing State Farm's denial of benefits in this action.  For each such claim, please provide the name of the PIP claimant, the date of loss, State Farm's claim number (if known), the date(s) of service, and the amount billed by Painsolvers." See Defendant's Counter Motion CSF Ex. A at 12.

v. Freitas, 121 Haw. 120, 128 (App. 2009).  "A communication is defamatory when it tends to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." Fernandes v. Tenbruggencate, 65 Haw. 226, 228, 649 P.2d 1144, 1147 (Haw. 1982) (citing Restatement (Second) Torts § 559 (1977)).  The Fernandes court further explained that "[w]hether a communication is defamatory 'depends, among other factors, upon the temper of the times, the current of contemporary public opinion, with the result that words, harmless in one age, in one community, may be highly damaging to reputation at another time or in a different place.'" Id.  A person who publishes a false defamatory communication is subject to liability only if he (a) knows that the statement is false and that it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them.  Restatement (Second) Torts § 580B.

     A party moving for summary judgment has the burden of persuading the court as to the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Miller v. Glenn Miller Prod., Inc., 454 F.3d 975, 987 (9th Cir. 2006)  The moving party may do so with affirmative evidence or by "'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477

U.S. at 325.[18]  Here, Defendant argues that Plaintiff "has never produced any admissible evidence that State Farm published defamatory material to a third party, let alone that Plaintiff has suffered special damages as a result thereof."  Defendant's Combined Mem. at 26.

In opposition, Plaintiff does not put forth any disputed issues of material fact, but rather asserts that "it is too early to decide State Farm's counter motion."  Plaintiff's Reply at 12.  Plaintiff argues that certain material facts remain to be discovered by deposition that preclude summary judgment and that State Farm's document discovery has been incomplete.  Plaintiff's Reply at 12-13.  Plaintiff is making a Federal Rule of Civil Procedure 56(f) ("Rule 56(f)") argument.

A.   <u>Rule 56(f) Framework</u>

Rule 56(f) provides, "if a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be

---

[18] When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial.  <u>Miller</u>, 454 F.3d at 987.  When the nonmoving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party.  <u>Id.</u>

undertaken; or issue any other just order." Fed. R. Civ. P. 56(f).

A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment. <u>Tatum v. City & County of S.F.</u>, 441 F.3d 1090, 1100 (9th Cir. 2006). "Under Rule 56(f), an opposing party must make clear what information is sought and how it would preclude summary judgment." <u>Garrett v. City & County of S.F.</u>, 818 F.2d 1515, 1518 (9th Cir. 1987). "Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment." <u>Brae Transp., Inc. v. Coopers & Lybrand</u>, 790 F.2d 1439, 1443 (9th Cir. 1986) (further observing that "[r]eferences in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f)"); <u>In re Silicon Graphics Inc. Sec. Litig.</u>, 183 F.3d 970, 989 (9th Cir. 1999) (finding that failing to file the required Rule 56(f) affidavit detailing with particularity the information sought was fatal to request for further discovery); <u>see also</u> <u>Tatum</u>, 441 F.3d at 1100 (finding that an attorney declaration was insufficient to support a Rule 56(f) continuance where declaration failed to specify specific facts to be discovered or explain how a continuance would allow the party to produce evidence precluding summary judgment). To prevail on a

Rule 56(f) motion, the movant must also show diligence in previously pursuing discovery.  <u>Germaine Music v. Universal Songs of Polygram</u>, 130 Fed. Appx. 153, 155 (9th Cir. 2005) (citing <u>Byrd v. Guess</u>, 137 F.3d 1126, 1135 (9th Cir. 1998)).

    B.   <u>Analysis of Rule 56(f) Request</u>

       The Court finds that Plaintiff fails to meet his burden under Rule 56(f).  Preliminarily, the Court observes that it is somewhat disingenuous for Plaintiff to move for Summary Judgement on part of the case, but to oppose Defendant's counter motion for summary judgment entirely by asserting that there has not yet been adequate discovery.  Plaintiff filed his First Amended Complaint almost ten months ago and has had ample opportunity to conduct discovery or at the very least obtain declarations in support of its opposition.  Furthermore, the Court observes that the dispositive motion deadline in this case is August 18, 2010, less than two weeks from now.

       Plaintiff asserts that "the specific facts Plaintiff will elicit from discovery will be the specific dates and contents of all communications to Plaintiff's patients and third parties (other than State Farm) which are the subject of [Defendant's Counter Motion for Summary Judgment], together with the missing documents."  7/22/10 Shaw Decl. ¶ 8 (attached to Plaintiff's Counter Motion Opposition CSF).  Plaintiff's counsel additionally declares that "[f]urther support exists for the

existence of these essential facts and documents in that an
attorney, who is also a patient of Painsolvers, has called
[Plaintiff's counsel] about a fairly detailed series of contacts
with State Farm regarding Painsolvers, some of which were
intrusive and defamatory." Id. ¶ 11. The Court is not persuaded
by these arguments.

        As Defendant argues, Plaintiff's opposition amounts to
a claim that Defendant is withholding documents that Plaintiff
"imagines might support its defamation claim" and a fishing
expedition in search of additional documents. Defendant's Reply
at 7. Plaintiff, however, has not provided even a bare minimum
of admissible evidence which might tend to support its claims for
defamation and slander. Defendant correctly asserts that Rule
56(f) is not a license for a fishing expedition in the hopes that
one might find facts to support its claims. Defendant's Reply at
9 (citing Robinson v. Allstate Ins. Co., __ F. Supp. 2d __, No.
08-cv-6431L, 2010 WL 1404023 at *8 (W.D.N.Y. Mar. 30, 2010) ("A
continuance under Rule 56(f) is not a license to go fishing for
evidence, in the hope of finding something that will support
one's claims. There must be some showing that the movant knows
what facts he is after, and some reasonable expectation not only
that those facts can be found, but that they will create a
genuine issue of material fact.") (internal citation omitted);
Shaefer-LaRose v. Eli Lilly & Co., 663 F. Supp. 2d. 674, 695

40

(S.D. Ind. 2009) ("When requesting additional discovery pursuant to Rule 56(f), '[p]laintiffs must do more than request a fishing expedition to hopefully find evidence that will allow them to make a case.")).

The Court is not persuaded by Plaintiff's argument that State Farm is purportedly withholding documents. Plaintiff argues that "State Farm admits contacting Plaintiff's patients by telephone, and in writing." Plaintiff's Counter Motion Opposition CSF ¶ 2. Plaintiff also asserts that "State Farm fraudulently concealed responsive documents." Plaintiff's Reply at 13. Yet, Plaintiff has not pursued such a contention by filing a motion to compel discovery.[19] The Court finds this to be a very serious allegation on Plaintiff's part, which should not be casually made. Plaintiff does not appear to base this argument upon anything more than mere speculation. The only basis upon which it appears Plaintiff's counsel came to this conclusion is the assertion that "an attorney had extensive

---

[19] Defendant argues "a party may not claim a right to an extension of time under Rule 56(f) by complaining that the party moving for summary judgment has not cooperated with discovery requests. Rather the remedy for noncompliance with requests for discovery is a motion to compel." See Defendant's Reply at 7 (citing Reyes v. Wilson Memorial Hosp., 102 F. Supp. 2d 798, 826 (S.D. Ohio 1998);Connor v. Reckitt & Colman, Inc., 84 F.3d 1100, (8th Cir. 1996)). Because Plaintiff's Rule 56(f) motion fails on other grounds, the Court need not determine this issue. However, the Court notes that the lack of a motion to compel certainly provides an indication both of the strength of Plaintiff's arguments and its diligence in discovery to this point.

communications with Ms. McLellan, none of which were produced as required by FRCP 34." Plaintiff's Reply at 14. However, according to State Farm, Plaintiff's document requests do not cover communications with the attorney/patient that Plaintiff references. See Defendant's Reply at 8-9. Further, as State Farm argues, it "has already produced hundreds of pages of documents responsive to Plaintiff's requests, many of which - such as denial letters and requests for information - were either directed to or copied to Plaintiff's patients." Id. at 7. The Court is uncertain what exactly Plaintiff hopes to find in Defendant's documents, but suspects as Defendant argues, Plaintiff is hoping to stumble across a "smoking gun." Plaintiff would have been better advised to depose the patients himself, or at the very least, obtain declarations regarding the allegedly defamatory statements.

The Court is also not persuaded by Plaintiff's argument that he forewent a scheduled 30(b)(6) deposition of Defendant before being aware there was a cross motion. Plaintiff asserts:

> The record shows that a recent FRCP 30(b)(6) deposition of State Farm was noticed. The deposition was scheduled to take place before Defendant filed its opposition. When Plaintiff's counsel cancelled the (continued) deposition, on or about 7-9-10, after speaking with Defense Counsel, he was not aware that a counter motion was being included.

Plaintiff's Reply at 13. However, as Defendant points out, "Plaintiff's deposition notice expressly stated that 'the matters

42

for examination will be limited to issues which Defendant State Farm may raise over exhibits supporting Plaintiff's pending motion to FRCP 56.'"  Defendant's Reply at 8; Ex. A to Declaration of Patricia Kehau Wall at 2-3.  Thus, contrary to Plaintiff's argument that had he known about the counter motion he would not have cancelled the deposition but "merely reduced its scope," it appears to the Court that Plaintiff would have had to expand the scope of the deposition.  Finally, it does not appear that even after receiving the counter motion, Plaintiff sought to notice a 30(b)(6) deposition on any topics raised by the counter motion.

For the foregoing reasons, the Court finds that Plaintiff has failed to meet his burden of demonstrating what specific facts could be discovered with additional discovery, the Court denies Plaintiff's 56(f) motion.

C. Defendant is Entitled to Summary Judgment on the Trade Libel or Disparagement and Slander Claims

The Court further finds that Plaintiff has failed to meet its burden to show that there are issues of material fact relating to its trade libel or disparagement and slander claims.

As discussed above, to prevail on a claim for trade libel or disparagement, a plaintiff must show at a minimum (1) a publication; (2) which induces others not to deal with the plaintiff; and (3) special damages.  Hawaiian Ins. & Guar. Co. Ltd. v Blair Ltd., 6 Haw. App. 447, 454-55, 726 P.2d 1310, 1315

43

(1986) (quoting Restatement (Second) of Torts § 626 (1977)).  To
prove defamation under Hawai'i law, Plaintiff must establish four
elements: (1) a false and defamatory statement concerning
another; (2) an unprivileged publication to a third party; (3)
the publisher was negligent; and (4) either actionability of the
statement irrespective of special harm, or the existence of
special harm caused by the publication.  Wilson v. Freitas, 121
Haw. 120, 128 (App. 2009).

The only "evidence" or facts that Plaintiff purports to
rely on in support of Plaintiff's claim that there was any
defamation is the statement that "an attorney, who is also a
patient of Painsolvers, has called [Plaintiff's counsel] about a
fairly detailed series of contacts with State Farm regarding
Painsolvers, some of which were intrusive and defamatory."
7/22/10 Shaw Decl. ¶ 11 (attached to Plaintiff's Counter Motion
Opposition CSF).  Plaintiff has not, however, submitted a
declaration from this person stating what was said, and thus the
Court is left only with hearsay statements and bald legal
conclusions that there were defamatory statements made about
Painsolvers.[20]  There are no allegations as to the content of the

_____

[20]  On August 5, 2010, Plaintiff submitted a Motion for
Leave to File Supplemental Declaration of Counsel [LR 56.1(h)] In
Opposition to Defendant's Counter Motion for Partial Summary
Judgment ("Plaintiff's Motion for Leave").  Doc. No. 55.
Attached to that motion, Plaintiff included a Declaration of
Counsel and Exhibit F, the proposed Supplemental Declaration.
(continued...)

statements whatsoever.  Furthermore, the Court observes that
although Plaintiff appears to assert that State Farm should have
already produced information about these communications,

---

(...continued)
Also on August 5, 2010, Defendant opposed Plaintiff's Motion.
See Defendant's Opposition to the Motion for Leave.  Doc. No. 56.
On August 6, 2010, Plaintiff filed a Reply to Defendant's
Opposition to the Motion for Leave.  Doc. No. 57.

    Pursuant to D. Haw. Local Rule 56.1(h), "[a]ffidavits
or declarations setting forth facts and/or authenticating
exhibits, as well as exhibits themselves, shall only be attached
to the concise statement.  Supplemental affidavits and
declarations may only be submitted with leave of court."

    The Court denies Plaintiff's Motion.  The Court finds
that Plaintiff has not established good cause for its failure to
timely file this declaration.  The only reason that Plaintiff's
counsel sets forth in its Motion for Leave is that "Plaintiff's
counsel finally received a return call from a witness with vital
information supporting claims two and three" and that "on August
4, 2010, Mr. Honda returned the calls and apologized that he was
out of the office last week and could not return the messages
left by [Plaintiff's counsel]."  Motion for Leave at 1,
Declaration of Counsel at 1.  However, Plaintiff counsel's
declaration indicates only that this proposed witness was out of
the office "last week," i.e., the business week of July 26-30,
2010.  Defendant's counter motion, however, was filed two weeks
prior to that on July 12, 2010.  Additionally, Plaintiff has had
ample opportunity to pursue discovery on his claims in the ten
months since he has filed his complaint and should not have been
waiting until forced to oppose a motion for summary judgment to
obtain the discovery necessary to support his claims.  Thus, in
the absence of any showing of diligence, the Court does not find
good cause to permit leave to file a supplemental declaration.

    Moreover, even were the Court to consider the
Supplemental Declaration, the Court would find that Plaintiff
still fails to meet its Rule 56(f) burden for many of the same
reasons discussed in this section.  The Supplemental Declaration
does little more than provide a name for the proposed witness
with knowledge of State Farm's allegedly defamatory statements
referenced in Plaintiff's Reply, and it merely reiterates the
conclusory assertion that State Farm made such statements.  It
does not, however, set forth the facts that Plaintiff expects to
discover to support its claim with adequate specificity.

45

Defendant asserts that these communications were not requested because they were not referenced in Plaintiff's document requests.  See Plaintiff's Reply at 14; Defendant's Reply at 8-9. Thus, it appears Plaintiff has not even properly propounded the discovery that it asserts Defendant has not produced.

At the hearing on these motions, Plaintiff asserted there was additional evidence that raises an issue of material fact regarding Plaintiff's trade libel and slander claims. First, Plaintiff argued that the denial forms attached to Defendant's Opposition CSF demonstrated that State Farm has defamed and slandered Painsolvers by sending letters to its patients accusing it of violating the law.  Tr. at 18-19.  The Court is not persuaded by this argument for multiple reasons. Defense counsel indicated that the denial forms are a form prescribed by the state insurance commissioner.  Tr. at 31.  A review of the denial forms themselves does not lead to the interpretation Plaintiff wishes.  With the exception of two denial forms that indicate benefits were denied because the PIP benefits limit had already been exhausted, each denial form indicates that benefits were being denied because "[t]he additional information or loss documentation requested to determine if the claim presented should be paid or denied has not been received, pursuant to HRS 431:10C-304(3) and HRS 431:10C-103.5."  See Defendant's Opposition CSF Exs. 1-29 (Exhibits 19

46

and 23 are the claims that were denied because benefits were exhausted).

Second, Plaintiff argued that Defendant had supplemented its document production to Plaintiff on Friday, July 30, 2010, just prior to the hearing on these motions, which was on Monday, August 2, 2010.  Plaintiff argued that the supplemental document production provided further evidence of State Farm making defamatory statements about Painsolvers and Dr. Shandu.  Subsequent to the hearing and with the consent of the parties, the Court has reviewed that supplemental production, bates-stamped SF 00868-SF 01000, and finds that it does not raise any issues of material fact regarding the trade libel or disparagement and slander claims.  The supplemental documents consist predominately of transcripts of three interviews State Farm conducted with the individuals who were injured in accidents.  Although, State Farm does reference Dr. Shandu in these documents, the Court does not find any defamatory or slanderous statements.  The Court does not find it to be defamatory or slanderous for State Farm to inquire of its insureds whether the doctor provided them with the option of filling their prescription elsewhere, to inquire about the procedures used in dispensing the medications at the doctor's office, or to mention the cost of bills submitted to it.

Plaintiff has failed to raise issues of material fact

47

on the trade libel or disparagement or slander claims. Accordingly, in light of the dearth of factual support for Plaintiff's trade libel or disparagement and slander claims, the Court grants Defendant's counter motion for summary judgment on those claims.

## CONCLUSION

For the foregoing reasons, the Court: (1) DENIES Plaintiff's motion for summary judgment on Counts One through Four, Seven, and Eight of the first claim, which are the only remaining viable counts in the first claim because Counts Five, Six, and Nine were dismissed in the Court's 1/22/10 Order; (2) MAKES a Rule 56(d) Determination as discussed _supra_; (3) DENIES Plaintiff's Motion for Leave to File a Supplemental Declaration; and (4) GRANTS Defendant's counter motion for partial summary judgment on Plaintiff's second claim for trade libel or disparagement and Plaintiff's third claim for slander.  Counts One through Four, Seven, and Eight of Plaintiff's first claim are all that remain for trial.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, August 6, 2010.



_____
Alan C. Kay
Sr. United States District Judge


Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co., Civ. No. 09-00429 ACK-KSC: Order (1) Denying Plaintiff's Motion for Summary Judgment, (2) Determining Facts Not At Issue Pursuant to Rule 56(d), (3) Denying Plaintiff's Motion for Leave to File a Supplemental Declaration; and (4) Granting Defendant's Cross Motion for Summary Judgment